IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE
_____

ZANDER GROUP HOLDINGS INC. and
JEFFREY J. ZANDER,

    Plaintiffs,

v.

KATZ, SAPPER & MILLER LLP;
KSM BUSINESS SERVICES INC.; and
ANDREW J. MANCHIR

No. 3:18-cv-00653
Judge Campbell/Brown

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
RULE 11 SANCTIONS AGAINST PLAINTIFFS' COUNSEL**
_____

COME NOW Defendants Katz, Sapper & Miller, LLP ("the LLP"), KSM Business Services, Inc. ("KSMBS"), and Andrew Manchir ("Manchir") (collectively "Defendants"), by and through counsel of record, Glassman, Wyatt, Tuttle & Cox, P.C., and file the following Memorandum of Law in Support of their Motion for Rule 11 Sanctions Against Plaintiffs' Counsel.

**INTRODUCTION AND FACTS**

For the reasons this Court must grant Defendants' Motion to Dismiss for Failure to State a Claim, this Court must also impose Rule 11 Sanctions against Plaintiffs' Counsel. The facts and circumstances leading up to this point are set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss for Failure to State a Claim, and are herein incorporated by reference as if done so verbatim. Reference to defined terms in the Memorandum of Law in Support of Defendants' Motion to Dismiss carry the same meaning here.

These Plaintiffs have filed an incredibly frivolous lawsuit against the LLP, KSMBS, and Manchir. There is zero good faith basis in law or fact for this Complaint to have been filed. Plaintiffs failed to provide any notice to Defendants prior to filing suit, and failed to even attempt to initiate a dialogue regarding the Settlement Agreement's applicability to the claims asserted in the present Complaint. In fact, Plaintiffs' counsel has repeatedly declined to even provide the foundational reasoning supporting their decision to advise Zander the present case would be warranted by existing law. Zander has initiated further litigation based on claims he specifically released in 2015. To be sure, Defendants expect it to be revealed Plaintiffs have additionally violated Rule 11(b)(1) and (3). If this case remains pending at that time, this motion will be amended to request monetary sanctions against Zander for his violations of these subsections. Unfortunately, at this time, Rule 11(c)(5)(A) prohibits monetary sanctions against Zander, personally, but does permit monetary sanctions directly against counsel.

As demonstrated below, Plaintiffs' Counsel's decision to file the Complaint in the present case fails to conform with existing Tennessee law. Despite Defendants' request for Plaintiffs' basis on which he believes this case is proper, Plaintiffs' counsel has still failed to provide any binding authority on which either he or his client believe that the filing of this Complaint does not violate the Settlement Agreement. As explained below, Tennessee law holds releases executed as part of a settlement agreement are enforced to the full extent of the contemplation of the parties when the release was executed.

## **LAW AND ARGUMENT**

**I.      Legal Standard for violating Rule 11(b).**

Fed. R. Civ. P. 11(b) states:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "However, the purpose of an award of attorneys fees under Rule 11 is to deter similar conduct in the future; it is not intended to compensate the party injured by the Rule 11 violation. Schmidt v. Nat'l City Corp., NO. 3:06-CV-209, 2008 U.S. Dist. LEXIS 118202, at *11 (E.D. Tenn. 2008).

3

"[W]hen the offending party is represented by a lawyer, only the lawyer may be burdened with a monetary sanction for a violation of Rule 11(b)(2)." Stalley v. Mt. States Health Alliance, No. 2:06-CV-216, 2008 U.S. Dist. LEXIS 109136, at *9 (E.D. Tenn. 2008).

"In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was 'reasonable under the circumstances.'" Salkil v. Mount Sterling Twp. Police Dep't., 458 F.3d 520, 528 (6th Cir. 2006); Brooks v. Whirlpool Corp., No. 1:10-cv-01098-JDB-cgc, 2011 U.S. Dist. LEXIS 94245, at *6-7 (W.D. Tenn. 2011) ("In the Sixth Circuit, the test for imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances."). "This is an objective standard—an individual's subjective good faith belief in the merits of a case is not enough to prevent a violation of Rule 11 and possible Rule 11 sanctions." Brooks, 2011 U.S. Dist. LEXIS 94245, at *7. "If a controlling case is fatal to a claim and a reasonably competent attorney would have discovered the authority through research, the claim is not well grounded in law." Id.

"An evaluation of the instances in which the Sixth Circuit has either granted sanctions or upheld their imposition reveals that, in order to be considered "unreasonable" so as to warrant penalization, a party's conduct must be relatively egregious. **For instance, the Sixth Circuit upheld a district court's imposition of sanctions on a plaintiff who filed suit against a defendant with respect to which it had waived all claims.**" Fulmer v. MPW Indus. Servs., Inc., No. 3:04-0879, 2006 WL 1722433, at *5 (M.D. Tenn. June 21, 2006) (citing Morris v. City of Detroit Water & Sewage Dep't, 20 Fed. App'x 466, 467 (6th Cir.2001)) (emphasis added).

4

**II.    Plaintiffs' counsel filed the present Complaint for claims that Zander released in 2015.**

Plaintiffs' counsel cannot claim ignorance of the existence of the Settlement Agreement. He signed it on page 6. Paul Krog's name is also listed as an attorney for plaintiff in the Settlement Agreement. Both Mr. Bulso and Mr. Krog represented Zander in Zander 1.

The Settlement Agreement clearly dictates that Zander and ZGH have knowingly and voluntarily released and forever discharged Manchir, KSMBS, and the LLP from any and all present or future claims or obligations arising out of the consulting services provided by Manchir and KSM relating to the proposed acquisition of certain Zander Insurance Group holdings by a new entity called Zander Group Holdings, Inc. Employee Stock Ownership Plan. It is of no consequence that the focus of Zander 1 was on the portion of the "consulting services" related to Zander's individual tax savings relating to the ESOP Transaction, nor is it of any consequence that Zander will argue his present cause of action did not exist at the time of the Settlement Agreement because the Settlement Agreement extends to all claims associated with the entirety of the "consulting services provided by Manchir and KSM relating to the ESOP Transaction." Settlement Agreement, at 1.

    **A.    The "consulting services" Defendants have been sued for in this case are the same consulting services contemplated in the Settlement Agreement.**

Plaintiffs' present Complaint concedes that "[a]mong the consulting services Mr. Manchir provided was the oversight of the valuation process performed by 2nd Generation." Complaint, ¶ 28. It is senseless to assume the phrase "consulting services" as used in the present Complaint holds a different meaning from "consulting services" as

5

used in the Settlement Agreement. "[E]ven where the contract language is plain and unambiguous, the terms should still be construed "with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used." Velsicol Chem. Corp. v. Reilly Indus., Inc., 67 F. Supp. 2d 893, 905 (E.D. Tenn. 1999). To do so forces Plaintiffs into the dual position of maintaining on the one hand that Defendants' sole role in the ESOP Transaction was limited to consulting on Zander's individual tax savings, thereby only releasing claims related to the individual tax advice, and on the other hand, maintaining that Defendants also assisted in creating the valuation that Zander now finds himself sued on by the Secretary of Labor. Zander cannot have it both ways. Either the release of Defendants for the consulting services they provided in relation to the ESOP Transaction extends to all of their involvement in the ESOP Transaction, and thus this case must be dismissed with prejudice, or Defendants have been sued on an issue for which Zander did not seek their consulting services as it relates to the ESOP Transaction, and thus this case must also be dismissed with prejudice. In either scenario, Plaintiffs filed a sanctionably frivolous complaint.

It is insincere to suggest that "consulting services relating to the ESOP Transaction," as the phrase is used in the definition of "Dispute," is limited simply to mean those consulting services forming the basis of Zander 1, and not the entirety of all the "consulting services relating to the ESOP Transaction." This is what both the plain language of the Settlement Agreement says and what was clearly within the contemplation of the parties at the time of its execution.

**B.    The assertion that Plaintiffs' present claims were not released merely because the Secretary sued Zander post-release does not rise to the level of a legal contention warranted by existing law.**

The plain language of the release contained within the Settlement Agreement is clear. There is no ambiguity. The Settlement Agreement did not operate to only release then existing disputes related to the consulting services. It operated to release "any and all" claims or obligations "arising out of" the "consulting services provided by Manchir and KSM relating to the ESOP Transaction." Settlement Agreement.

Tennessee law does not mandate that only current, accrued claims at the time of execution may be released by contract. Tennessee law simply requires parties to intend to release the claims indicated by the plain language of the contract, and that such released claims come within "the contemplation of the parties when the release was executed." Marlett, 2007 WL 1048950, at *6; e.g., Woody v. A.W. Chesterton Co., No. M200701210COAR9CV, 2008 WL 696160, at *4 (Tenn. Ct. App. Mar. 13, 2008) ("In support of her argument that Tennessee law does not allow the release of future claims, Ms. Woody cites Poster v. Andrews, 182 Tenn. 671, 189 S.W.2d 580 (Tenn.1943), and Cocke v. Stuart, 7 Tenn. (Peck) 137 (1823). Both cases involved causes of action that did not exist at the time when the plaintiffs signed the releases, and the releases did not expressly cover such claims. While some language used by the court in Cocke and quoted by the court in Poster suggests that a prospective claim cannot be released, subsequent cases have clarified the issue by indicating that claims arising after the signing of a release may be released if the language of the release so provides.").

To further illustrate the distinction, the Tennessee Court of Appeals has stated, "Colorado law, like Tennessee law, provides that a release ordinarily operates on matters

7

expressed therein which are already in existence at the time of the giving of the release, and demands subsequently maturing are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed." Sherman v. Am. Water Heater Co., 50 S.W.3d 455, 460 (Tenn. Ct. App. 2001). The Settlement Agreement releases all claims Zander and ZGH "may now have or hereafter assert" against these Defendants. Settlement Agreement, at 3. Zander's release of claims other than those asserted in Zander 1 and his release of claims that Zander and ZGH may "hereafter assert" against these Defendants after the execution of the Settlement Agreement are "expressly embraced" in the Settlement Agreement and undoubtedly fit "within the fair import of the terms employed" in the Settlement Agreement.

**III.     A reasonably competent attorney in Plaintiffs' Counsel's position would have known the claims advanced in Plaintiffs' Complaint were not well grounded in law.**

The test for whether Rule 11 sanctions are warranted in this instance is whether Plaintiffs' Counsel's filing of the Complaint was "reasonable under the circumstances." Salkil, 458 F.3d 520, 528 (6th Cir. 2006). "[A]n individual's subjective good faith belief in the merits of a case is not enough to prevent a violation of Rule 11 and possible Rule 11 sanctions." Brooks, 2011 U.S. Dist. LEXIS 94245, at *7. Thus, there must exist some circumstance or legal authority beyond Plaintiff's Counsel's "subjective good faith belief" that he filed a Complaint for claims that were not released in the Settlement Agreement in order to avoid Rule 11 Sanctions.

In short, even a cursory review of the law in place would have revealed the law on point is ubiquitous in Tennessee state court, U.S. District Courts in Tennessee, and the Sixth Circuit, all of which is adverse to Plaintiffs' position here. "If a controlling case is

fatal to a claim and a reasonably competent attorney would have discovered the authority through research, the claim is not well grounded in law." Brooks, 2011 U.S. Dist. LEXIS 94245, at *7.  Plaintiffs' filing of the present Complaint in the face of unanimously contrary law is more than "relatively egregious" enough to warrant monetary sanctions. Furthermore, the Sixth Circuit has affirmed a trial court does not abuse its discretion for imposing sanctions on a plaintiff who files suit against a defendant on claims he previously waived. Fulmer, 2006 WL 1722433, at *5.  Such is the case here.

IV.     Conclusion.

WHEREFORE, PREMISES CONSIDERED, Defendants Katz, Sapper & Miller, LLP, KSM Business Services, Inc., and Andrew Manchir respectfully request that this Court enter an Order imposing sanctions to the fullest extent allowed by Fed. R. Civ. P. 11(c), up to and including dismissal of the Complaint and all expenses and reasonable attorney's fees incurred by Defendants in connection with this meritless case, be imposed against Plaintiff's Counsel Eugene N. Bulso, Jr. and Paul J. Krog.

Respectfully submitted:

**Glassman, Wyatt, Tuttle & Cox, P.C.**

/s/ Richard Glassman
RICHARD GLASSMAN (#7815)
26 North Second Street
Memphis, TN 38103
(901) 527-4673 – phone
(901) 521-0940 – fax
rglassman@gwtclaw.com
GWTC No. 12-446
*Attorney for Defendants*

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2018, a copy of the foregoing was sent via the Court's ECF system, U.S. Mail, Facsimile and/or electronic mail to the following:

Eugene N. Bulso, Jr. (Tenn. BPR No. 12005)
Paul J. Krog (Tenn. BPR No. 29263)
LEADER, BULSO & NOLAN PLC
414 Union Street, Suite 1740
Nashville, TN 37219

/s/ Richard Glassman
RICHARD GLASSMAN

10

Case 3:18-cv-00653   Document 23-1   Filed 10/12/18   Page 10 of 10 PageID #: 262