# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ZANDER GROUP HOLDINGS, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KATZ, SAPPER & MILLER LLP, et al., )<br>)<br>Defendants. ) | NO. 3:18-cv-00653<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE NEWBERN |

## MEMORANDUM

### I. INTRODUCTION

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. No. 46), Plaintiffs' Response (Doc. No. 48), and Defendants' Reply (Doc. No. 51). For the reasons set forth below, the Motion is **DENIED**.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Zander Group Holdings, Inc. ("ZGH") and Jeffrey J. Zander brought this action against Defendants Katz, Sapper & Miller LLP ("the LLP"), KSM Business Services, Inc. ("KSMBS"), and Andrew J. Manchir, asserting claims for negligent misrepresentation, breach of fiduciary duty, negligence, and contribution or indemnity. (Doc. No. 1). Plaintiffs allege they engaged Defendants to advise them regarding the creation of an employee stock ownership plan ("ESOP") in 2011. (*Id.* ¶¶ 8-11). In 2017, the United States Secretary of Labor sued Plaintiffs, asserting violations of the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the ESOP transaction. (*Id.* ¶ 12). Through this action, Plaintiffs seek to recoup any liability imposed against them in the ERISA case. (*Id.* ¶¶ 13-15).

Before the Secretary's action, in August 2012, Mr. Zander and JJZ Insurance Agency d/b/a Zander Insurance Group ("JJZIA") filed a lawsuit in Davidson County Chancery Court against the same defendants. (Plaintiffs' Response to Statement of Undisputed Material Facts ¶ 1 (Doc. No. 49) (hereinafter "Plaintiffs' Response to Facts")). The defendants subsequently removed the lawsuit to federal court based on diversity jurisdiction, styled as *Zander, et al. v. Katz, Sapper & Miller, LLP, et al.*, No. 3:12-cv-00967 ("Zander 1"). (*Id.*) The Complaint alleged the defendants were negligent because the tax advice given to Mr. Zander as part of the ESOP transaction was inaccurate. (*Id.* ¶ 8). The Complaint also asserted causes of action for negligent misrepresentation and breach of fiduciary duty. (*Id.* ¶ 9).

The case was assigned to former District Judge Kevin H. Sharp. In his opinion denying the parties' cross motions for summary judgment, Judge Sharp described the facts surrounding the ESOP transaction as follows:

> Prior to the September 2011 transaction at the heart of this case, Jeffrey Zander owned 100% of JJZIA, a Tennessee general partnership that sells insurance products under the name Zander Insurance Group. In 2010, Zander sought to recapitalize his interest in JJZIA by transferring a minority of his interest in the company to a newly created employee stock ownership plan ('ESOP'). Zander consulted with 2nd Generation Capital, LLC, a Nashville based merchant bank, which suggested that Defendants had the expertise to shape and execute the transaction. Zander met with Manchir, who, Plaintiffs say, told Zander that Defendants could advise on the financial, tax, and other benefits that a leveraged ESOP acquisition of a minority interest in JJZIA could bring. Plaintiffs claim that Zander retained both the LLP and KSMBS in February 2011 to advise him on this transaction, and that Manchir executed an engagement letter on behalf of both entities. The LLP denies this, and instead is of the view that Zander never engaged it for any purpose and that Manchir, who is not an employee of the LLP, had no ability to bind it in any manner.
>
> Over the next six months, Defendants—along with a phalanx of consultants, accountants, and lawyers—advised Zander on the proposed acquisition of certain JJZIA assets by the to-be-formed Zander Group Holdings, Inc. ('ZGH') ESOP. Zander settled on a leveraged ESOP acquisition of a minority interest in JJZIA for multiple reasons. . . .

2

> To undertake the ESOP transaction, Zander had to engineer a new corporate configuration. First, Zander had to form a new entity to sponsor the ESOP plan because JJZIA, as a partnership, could not do so. So Zander created ZGH, a subchapter S corporation that would own a 49% interest in JJZIA, to be the plan sponsor. Next, Zander was advised that JJZIA's employees should become employees of ZGH to be eligible to participate in the ZGH-sponsored ESOP, and then be 'leased' back to JJZIA. ZGH and JJZIA entered into a Management Agreement on September 1, 2011, for that purpose.
>
> Under the Agreement's terms, JJZIA agreed to pay ZGH the 'cost of labor' of ZGH's employees. (Docket No. 104-1 at 1–2). The Agreement states that the 'cost of labor' includes 'the compensation paid to the ZGH Employees (including without limitation, wages reported on IRS Form W-2, plus pre-tax employee elective deferrals), the cost of employee benefits provided to the ZGH Employees and cost of insurance coverage for each period of service performed by the ZGH Employees.' (*Id.*). Finally, the Agreement says that the 'cost of labor for the ZGH Employees is set forth on the Staffing Schedule, which may be modified from time to time by the Parties, provided that any such modification shall be in writing and signed by the Parties.' (*Id.*).
>
> In addition to this employee 'lease back' arrangement reflected in the Management Agreement, ZGH and JJZIA also entered into a separate Loan and Pledge Agreement. This latter agreement accomplished two goals. First, ZGH loaned the ESOP $35.5 million to fund the ESOP's indirect purchase of a 49% interest in JJZIA. (Docket No. 104-2 at 1). Next, to ensure that the ESOP could service that debt, ZGH agreed to 'make contributions to the ESOP in amounts which . . . are sufficient to enable the [ESOP] to make all principal and interest payments' to ZGH. (*Id.* at 4–5).

(*Id.* ¶ 11). Judge Sharp described the "nub of the parties' dispute" in that case as "what Manchir and his confederates meant when they told Zander that he would realize 'tax savings' – a tax credit that would result in a dollar-for-dollar reduction in tax liabilities, as Plaintiffs insist, or a tax deduction that would reduce Plaintiffs' income subject to tax, as Defendants say." (Doc. No. 183, at 10 in Case No. 3:12-cv-00967).

Zander 1 was tried to a jury over six days in July 2014, and the jury returned a verdict in favor of Zander and JJZIA. (Plaintiffs' Response to Facts ¶¶ 16, 17). In January 2015, Judge Sharp granted the defendants' motion for remittitur or new trial, indicating he would order a new trial

3

unless Zander and JJZIA accepted the remittitur. (*Id.* ¶ 18). Zander and JJZIA accepted the remittitur, but appealed to the Sixth Circuit Court of Appeals. (*Id.* ¶ 19). The defendants also filed an appeal. (*Id.* ¶ 21). The Sixth Circuit dismissed the plaintiffs' appeal, explaining that a party may not appeal from a remittitur order he has accepted. (*Id.* ¶ 20).

On April 27, 2015, the parties executed a Confidential Settlement Agreement and Release ("Settlement Agreement"). (*Id.* ¶ 22). The defendants subsequently entered a Satisfaction of Judgment and Release of Bond, stating that "[a]s a result of a negotiated settlement, all judgments entered in this case (Docket Nos. 225, 226 and 296) have been fully and finally satisfied." (*Id.* ¶ 23).

The Settlement Agreement was made and entered into by Mr. Zander, individually and as Trustee of the Cardinal Trust, the JJZIA, Mr. Manchin, KSMBS, and the LLP. (*Id.* ¶ 24). The Agreement states that references to "JJZ Insurance Agency" includes its "owners," "affiliates," and "related entities." (*Id.* ¶ 26). Although Zander Group Holdings, Inc. is not a named party to the Settlement Agreement, it is an "owner," "affiliate," and "related entity" to JJZ Insurance Agency. (*Id.* ¶¶ 27-28).

After a series of "whereas" clauses and a "definitions" sections, the Settlement Agreement states, in Paragraph 2, that the plaintiffs will be paid $3 million dollars, and that they "acknowledge this payment is the only payment that will ever be made to them with respect to any claims or obligations asserted in the Action, the only payment made concerning the Dispute, and constitutes full and final satisfaction of all judgments entered in the Action." (Doc. No. 46-3 ¶ 2). The next paragraph, the one that is pivotal to the matter at issue, is entitled "Release of Claims Against Manchir and KSM," and states:

> Zander and JJZ knowingly and voluntarily release and forever discharge Manchir and KSM from any and all present or future claims or obligations of any kind or

4

nature in any way arising out of the Dispute, including without limitation all claims and obligations asserted in the Action, whether known or unknown, knowable or unknowable, which Zander and JJX may now have or hereafter assert against Manchir or KSM.

(*Id.* ¶ 3). The terms "Dispute" and "Action" are not defined in the definitional section, but are referenced and capitalized in the "whereas" section as follows:

> WHEREAS, Zander, Manchir and KSM executed an engagement letter under which Manchir and KSM agreed to provide certain consulting services relating to the proposed acquisition of certain Zander Insurance Group holdings by a new entity called Zander Group Holdings, Inc. Employee Stock Ownership Plan (the 'ESOP Transaction');
>
> WHEREAS, **a dispute arose between the parties concerning the consulting services provided by Manchir and KSM relating to the ESOP Transaction (the 'Dispute')**;
>
> WHEREAS, **on or about August 29, 2012, Zander and JJZ filed a lawsuit relating to the Dispute** against Manchir and KSM in the Chancery Court for Davidson County, Tennessee, Case No. 12-1250-1;
>
> WHEREAS, on or about September 19, 2012, Manchir and KSM removed this lawsuit to the United States District Court for the Middle District of Tennessee, Case No. 3:12-CV-00967 **(hereinafter, the 'Action');**
>
> * * *
>
> WHEREAS, the parties now find it in their mutual interests to forego further litigation and settle **all claims asserted in the Action and any other claim Zander or JJZ may possess relating to the Dispute.**

(*Id.,* at p. 1) (emphasis added).

The Agreement also states, under Paragraph 12, entitled "Authority:"

The parties represent and warrant that each party signing this Agreement has full authority to do so.

> THE PARTIES HAVE READ THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE AND HAVE HAD THE TERMS USED HEREIN AND THE CONSEQUENCES HEREOF EXPLAINED BY THEIR LEGAL COUNSEL. THEY ARE AWARE THAT THIS CONFIDENTIAL SETTLMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.

5

(*Id.* ¶ 12). Finally, the Court notes, the Agreement contains an integration clause, stating that the Agreement constitutes the "entire agreement" between the parties. (*Id.* ¶ 10).

On August 23, 2017, the Secretary of Labor filed suit against Mr. Zander, ZGH, the ESOP's Trustee Stephen Thompson, and the ESOP, alleging violations of ERISA. (Plaintiff's Response to Facts ¶ 42). The Secretary alleged that a valuation report provided by Second Generation Capital, LLC, in connection with the ESOP transaction, contained numerous flaws, which grossly inflated the value of the Company's shares. (Complaint ¶ 31 (Doc. No. 1 in Case No. 3:17cv01187)). According to the Complaint, Mr. Zander actively lobbied for a higher value during preparation of the report, and Mr. Thompson failed to understand and critically analyze the report. (*Id.*) As a result, the Complaint alleges, the Plan significantly overpaid for shares of the Company's stock. (*Id.* ¶¶ 32-43).

Count I of the Complaint alleged Mr. Zander and Mr. Thompson breached their fiduciary duties to the Plan by relying on the conclusions in the "Valuation Report," and by causing the Plan to purchase the Company's stock "in excess of and not reflective of fair market value." (*Id.* ¶¶ 44, 45). Count II alleged Mr. Zander and Mr. Thompson engaged in a non-exempt prohibited transaction by influencing the conclusion as to the value of the stock, and by authorizing the Plan to purchase the stock at a price above fair market value. (*Id.* ¶ 49). Count III alleged Mr. Zander and Mr. Thompson violated ERISA by acting in a transaction on behalf of a party whose interests were adverse to the interests of the Plan. (*Id.* ¶ 54).

The parties agree that the claims *in this case* involve the aspect of Defendants' consulting services relating to the "valuation analysis" of the ESOP Transaction – the actions underlying the Secretary's ERISA claims. (Plaintiffs' Response to Facts ¶ 36). Plaintiffs seek to recoup from Defendants all amounts incurred to defend and resolve the Secretary's Complaint. (*Id.* ¶ 46).

Through the pending Motion, Defendants argue Plaintiffs' claims are barred by the Zander 1 Settlement Agreement.

### III. ANALYSIS

#### A. The Standards Governing Motions for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.* Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir. 2014). The court does not, however, make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat the motion, the nonmoving party must provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in its favor. *Celotex Corp.*, 477 U.S. at 324; *Shreve,* 743 F.3d at 132. Ultimately, the court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B. The Settlement Agreement**

The Settlement Agreement's choice-of-law clause provides the agreement is to be construed in accordance with Tennessee law, and both parties cite Tennessee law in their briefs. Under Tennessee law, "a release is a contract and rules of construction applied to contracts are used in construing a release." *Richland Country Club, Inc. v. CRC Equities, Inc.,* 832 S.W.2d 544, 557 (Tenn. Ct. App. 1991). In contract cases, the "cardinal rule" is that "courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* 566 S.W.3d 671, 688 (Tenn. 2019). The "lodestar of contract interpretation" is the written words of the contract, but courts may also consider "the situation of the parties and the circumstances of the transaction in interpreting those words." 566 S.W.3d at 692, 694.

When a contract has an integration clause – when it is intended to be the complete and exclusive statement of the parties' agreement – the parol evidence rule "does more than prohibit the use of pre-contract negotiations to contradict the contract's terms; it also prohibits the use of pre-contract negotiations within *the scope of* the agreement in a way that would *supplement or limit* its terms, even if that evidence is consistent with the written terms of the contract." 566 S.W.3d at 696. On the other hand, even when a contract is fully integrated, the court may consider extrinsic evidence to give context to the language used, as long as the evidence is not used to vary, contradict, or supplement the contractual terms. 566 S.W.3d at 697-98.

In construing releases, Tennessee courts have sometimes characterized them as general or specific: "A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release." *Cross v. Earls,* 517 S.W.2d 751, 752 (Tenn.

1974); *see also Johansen v. Sharber,* 2018 WL 833306, at *5-6 (Tenn. Ct. App. Feb. 12, 2018). As for tort claims "which have not matured or were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made," those claims are not discharged by a release. *Jackson v. Miller,* 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989). As with other contracts, however, "the scope and extent of [a] release depends on the intent of the parties as expressed in the instrument." *Id.; Woody v. A.W. Chesterton Co.,* 2008 WL 696160, at 4-5 (Tenn. Ct. App. Mar. 13, 2008) (". . . claims arising after the signing of a release may be released if the language of the release so provides.")

Defendants argue the release applies to all causes of action arising out of the consulting relationship between the parties, including the causes of action alleged in this case relating to the ESOP valuation analysis. Plaintiffs contend the release is limited to the "Dispute" between the parties adjudicated in Zander 1, which involved tax advice, not valuation analysis or ERISA compliance.

As discussed above, the "Release" provision in the Agreement "release[s]" the defendants from "any and all present or future claims or obligations of any kind or nature in any way arising out of the *Dispute*, including without limitation all claims and obligations asserted in the *Action*, whether known or unknown, knowable or unknowable," which the plaintiffs "may now have or hereafter assert" against the defendants. The plain language of the Agreement, therefore, restricts the claims released to those arising out of the "Dispute," including those claims asserted in the "Action."

The "Dispute" is not defined, but the "whereas" clauses assign meaning to the term: "a dispute arose between the parties concerning the consulting services provided by Manchir and KSM relating to the ESOP Transaction (the 'Dispute')" and the plaintiffs "filed a lawsuit relating

9

to the Dispute." By specifically referring to the "Dispute" that later became an "Action," the language of the Agreement reflects an intent to limit the release provisions to the subject matter of Zander 1.

The Complaint in Zander 1, along with Judge Sharp's opinion, indicate that the claims in that case were based on the tax advice given by the defendants during the ESOP transaction. There is nothing in the record to suggest the "Dispute" in Zander 1 had anything to do with the valuation analysis aspect of the ESOP transaction that formed the basis for the Secretary of Labor's ERISA action. Nor did the ERISA action have anything to do with the defendants' tax advice. Therefore, because the language of the Agreement specifically released only those claims "arising out of the Dispute" about tax advice, the claims in this action, seeking recoupment for the ERISA violations, were not included in the release provision.

Although the claims in this case were "unknown" to the parties at the time they executed the Agreement, they could have been included in the release had the language suggested such an intent. Rather than limit the claims released to the "Dispute," the parties could have simply released all claims (including unknown and future claims) arising out of the "ESOP Transaction" or "the consulting services" provided by the defendants. Despite Defendants' insistence to the contrary, that is not what the plain language of the Agreement provides. For that reason, the Settlement Agreement does not bar the claims in this case.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 46) is **DENIED.**

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

10

Case 3:18-cv-00653   Document 53   Filed 10/20/20   Page 10 of 10 PageID #: 642